UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

James R. Wells,

    Plaintiff,

v.                                                       Civil No. 17-cv-807 (JNE/FLN)
                                                             ORDER

BNSF Railway Company,

    Defendant.

Plaintiff James R. Wells ("Wells") brings three claims against Defendant BNSF Railway Company ("BNSF"): (1) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), (2) improper use of medical examination results in violation of the ADA, and (3) disability discrimination in violation of the Minnesota Human Rights Act ("MHRA").  Sec. Am. Compl. ¶¶ 32-55, ECF No. 52.  To prevail on any of these claims, Wells must demonstrate that he qualifies as "disabled."

BNSF moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the Second Amended Complaint contains insufficient facts to show that Wells is "disabled" under either the ADA or MHRA.  For that reason, BNSF contends that Wells fails to state any claims to relief and the Court should dismiss all three claims.  BNSF Br. 1, ECF No. 55.  Wells opposes the motion to dismiss.  Wells Br. 1, ECF No. 64.  For the reasons set forth below, the Court grants the motion.

## BACKGROUND[1]

Wells has spent over twenty years as a laborer in heavy construction. Sec. Am. Compl. ¶ 9. In 2000, Wells had neck surgery requiring a cervical discectomy and two-level spinal fusion. *Id.* ¶ 10. Following the surgery, Wells worked as a pile driver, performed "physically demanding work in heavy construction for several years," and suffered no "aggravation or recurrence of any neck or cervical spine condition." *Id.* ¶ 11.

In February of 2008, Wells applied to and received a conditional offer of employment from BNSF in Minnesota as a track laborer. *Id.* ¶¶ 12-15. The track laborer position involves "laying down railroad tracks and performing repairs on railroad tracks, which is physically demanding." *Id.* ¶ 13. BNSF conditioned the offer on Wells' successful completion of a medical evaluation. *Id.* ¶ 15. In March of 2008, Comprehensive Health Services, Inc. ("CHS"), a medical contractor, conducted the medical examination of Wells, consisting of a Commercial Driver Fitness Determination, Occupational Assessment, and Vision Evaluation. *Id.* ¶¶ 15-16. Wells disclosed the above surgery, stated that the surgery was successful, and confirmed that he had no work limitations. *Id.* ¶ 17. CHS acquired Wells' medical records and ultimately concluded that Wells passed the medical examination. *Id.* ¶ 18. Wells alleges that the passing results "confirm that [he] could perform the essential functions of the track laborer position without any reasonable accommodation and that [he] did not pose a threat to himself or anyone else." *Id.* ¶ 19.

---

[1] When reviewing a motion under Rule 12(b)(6), the Court "accept[s] as true the factual allegations contained in the complaint and draw[s] all reasonable inferences in favor of the nonmoving party." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 781 (8th Cir. 2009).

2

The BNSF Medical Department received the results of the CHS examination and concluded that Wells was "not medically qualified for [the] safety sensitive Track Laborer position due to significant risk of aggravation or recurrence of a neck/cervical spine condition following 2-level spinal fusion." *Id.* ¶ 20. On April 11, 2008, BNSF withdrew its employment offer. *Id.* ¶ 21. BNSF did not try to eliminate the alleged "significant risk" and it did not determine whether Wells could work as a track laborer if given reasonable accommodations. *Id.* ¶¶ 27-28. Wells then "applied for other positions with" BNSF, but BNSF made him no offers. *Id.* ¶ 29.

From these events, Wells concludes that BNSF mistakenly regarded him as disabled such that he was "substantially limited [in] the major life activity of working." *Id.* ¶¶ 3, 23, 24. In April of 2008, Wells filed a discrimination charge with the Minnesota Department of Human Rights and the EEOC. *Id.* ¶ 31. In July of 2012, the EEOC "issued a determination that there is reasonable cause to believe that [BNSF] committed an unfair discriminatory practice." *Id.* The EEOC issued Wells a Notice of Right to Sue on December 19, 2016. *Id.*

Wells filed his first Complaint on March 17, 2017, asserting claims under the ADA and MHRA. ECF No. 1. On April 11, 2017, BNSF moved to dismiss under Rule 12(b)(6) for failure to state a claim. ECF Nos. 9, 11. Among other arguments, BNSF argued, as it does now, that Wells offered no facts to show that he qualifies as "disabled" under either the ADA or MHRA. ECF No. 11 at 6. On May 1, 2017, Wells voluntarily filed his First Amended Complaint. ECF No. 24. On May 15, 2017, BNSF again moved to dismiss for failure to state a claim, again arguing that Wells offered no facts to show

3

that he qualifies as "disabled." ECF Nos. 25, 27.  Wells opposed this second motion to dismiss.  ECF No. 37.  On July 7, 2017, the Court issued an order allowing Wells to "serve and file either (1) a Second Amended Complaint, if BNSF Railway consents in writing to the amendment, or (2) a motion to amend.  *See* Fed. R. Civ. P. 15(a)(2); D. Minn. LR 15.1."  ECF No. 41 at 2.

With the consent of BNSF, Wells filed a Second Amended Complaint.  ECF No. 52.  The Second Amended Complaint brings three claims.  Count I alleges that BNSF violated 42 U.S.C. § 12112(a) by failing to hire Wells based on a perceived disability.  Sec. Am. Compl. ¶¶ 32-39.  Count II alleges that BNSF violated 42 U.S.C. § 12112(d)(3)(C) by improperly using the results of a medical examination to discriminate against Wells based on a perceived disability.  *Id.* ¶¶ 40-47.  Count III alleges that BNSF violated Minn. Stat. § 363A.08, subd. 2 by discriminating against Wells with respect to hiring based on a perceived disability.  *Id.* ¶¶ 48-55.

On August 15, 2017, BNSF filed its third motion to dismiss under Rule 12(b)(6).[2]  ECF Nos. 53, 55.  In its third motion, which is presently before the court, BNSF once more argues that Wells offers insufficient facts to show that he is "disabled," "a necessary element of each of his claims."  BNSF Br. 1, ECF No. 55.  Wells opposes this third motion to dismiss, maintaining that the Second Amended Complaint contains

---

[2] The Court denies as moot BNSF's second motion to dismiss.  *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supercedes an original complaint and renders the original complaint without legal effect."); *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002) ("If anything, Pure Country's motion to amend the complaint rendered moot Sigma Chi's motion to dismiss the original complaint.").

sufficient facts to state claims to relief. But Wells also insists that "the Court should grant [him] leave to amend his complaint again if it deems this necessary." Wells Br. 14, ECF No. 64. BNSF opposes any further amendments. BNSF Reply 7-9, ECF No. 68.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions." *Twombly*, 550 U.S. at 555 (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In short, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## DISCUSSION

### I.   Disability Discrimination Under the ADA

Wells alleges that BNSF violated 42 U.S.C. § 12112(a).[3] Sec. Am. Compl. ¶¶ 32-39. This section prohibits an employer from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee

---

[3] "Congress enacted amendments to the ADA in 2008, which became effective January 1, 2009. . . . The amendments broadened the definition of what constitutes a disability and rejected the strict standards" that the Supreme Court had adopted. *Nyrop v. Indep. Sch. Dist. No. 11*, 616 F.3d 728, 734 n.4 (8th Cir. 2010). The amendments are not retroactive. *Id.* The events leading to the claims in the Second Amended Complaint all occurred before January 1, 2009. Consequently, the 2008 amendments to the ADA are inapplicable to Wells' claims. No party disputes this conclusion.

5

compensation, job training, and other terms, conditions, and privileges of employment." To prevail, Wells must prove that he has a "disability." Section 12102(2) states that an individual has a "disability" if the individual "(A) [has] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) [is] regarded as having such impairment."

Wells asserts that he is disabled under § 12102(2)(C). Sec. Am. Compl. ¶¶ 3, 23, 24; Wells Br. 8, 10. He claims that BNSF regarded him as having a disability that substantially limits the major life activity of working. Sec. Am. Compl. ¶¶ 3, 24; Wells Br. 10. BNSF argues that Wells offers insufficient facts to support a finding that BNSF regarded his disability as substantially limiting his ability to work. BNSF Br. 5-13.

Thus, the Court must decide whether Wells' Second Amended Complaint contains sufficient factual allegations to support the necessary element that BNSF deemed Wells substantially limited in working.

An employer regards a person as substantially limited in working if the employer regards the person as "unable to work in a broad class of jobs." *Knutson v. Ag Processing, Inc.*, 394 F.3d 1047, 1051 (8th Cir. 2005) (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999)). "An impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir. 1995) (citation omitted). Put differently, the employer must regard the perceived disability as precluding the plaintiff "from more than one type of job, a specialized job, or a particular job of choice." *Schuler v. SuperValu, Inc.*, 336 F.3d 702, 705 (8th Cir. 2003) (quoting *Sutton*, 527 U.S. at 492).

6

There are two factual allegations in the Second Amended Complaint that relate to Wells' claim that BNSF regarded him as substantially limited in working a "broad class of jobs." First, the Second Amended Complaint asserts that, "[i]f [Wells] was not medically qualified for the track laborer position due to significant risk of aggravation or recurrence of a neck or cervical spine condition, as [BNSF] believed, [Wells] would be substantially limited in the major life activity of working." Sec. Am. Compl. ¶ 22. Next, the Second Amended Complaint states that Wells "applied for other positions with [BNSF] after April 11, 2008, but [BNSF] did not extend him any other offers of employment." *Id.* ¶ 29.

This is not enough. Wells first simply declares that, because BNSF deemed him unable to work in one particularly demanding and "safety sensitive" job, BNSF likewise deemed him unable to work in a "broad class of jobs." The inability to perform one specialized job is not synonymous with the inability to perform jobs broadly. Wells' inference to the contrary is "speculative" and "conclusory." *See, e.g.*, *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Nevertheless, it is theoretically possible that, as Wells claims, BNSF refused to extend Wells other offers of employment because BNSF believed Wells was unable to work in a broad class of jobs. But this inference is purely speculative. Wells provides no information about the other jobs to which he applied. Consequently, Wells could have received no offers of employment following applications to either "a narrow range of jobs" *or* a "broad class of jobs." If, for example, he applied to only "a narrow range of jobs" related to the track laborer position, BNSF's failure to offer one of those jobs would

7

not signal a belief that Wells is unable to work in a broad class of jobs. On the other hand, if Wells applied to a broad class of jobs, BNSF's failure to offer one of those jobs could potentially signal a belief that Wells is unable to work in a broad class of jobs. Because Wells offers no factual details, there is no basis from which the Court can plausibly infer that BNSF's failure to offer Wells another job revealed a belief that Wells was "unable to work in a broad class of jobs." *See Iqbal*, 556 U.S. at 678 (requiring "a claim to relief that is plausible on its face").

Accordingly, the Second Amended Complaint contains insufficient facts to show that BNSF regarded Wells as disabled under 42 U.S.C. § 12102(2)(C). By extension, Wells has failed to state a claim to relief and, therefore, the Court grants the motion to dismiss this claim.

## II.     Improper Use of Medical Examination Results

Under 42 U.S.C. § 12112(d)(3)(C), an employer may use the results of a post-offer medical examination "only in accordance with" § 12112. Thus, an employer violates § 12112(d)(3)(C) if the employer uses the results of a post-offer medical examination to discriminate against an individual in violation of § 12112(a). Wells alleges that BNSF violated § 12112(d)(3)(C) by improperly using his medical examination results to discriminate in violation of § 12112(a). Sec. Am. Compl. ¶¶ 40–47; Wells Br. 12. Therefore, establishing a violation of § 12112(d)(3)(C) requires establishing a violation of § 12112(a). As explained above, the Court dismisses Wells' claim for a violation of § 12112(a). As a result, the Court also grants the motion to dismiss Wells' claim for a violation of § 12112(d)(3)(C).

### III.     Disability Discrimination under the MHRA

Under the MHRA, an employer is liable for an unfair employment practice if the employer, because of a disability, "discriminate[s] against a person with respect to hiring." Minn. Stat. § 363A.08, subd. 2. The MHRA definition of "disability" mirrors the ADA definition: "A disabled person is any person who (1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." Minn. Stat. § 363A.03, subd. 12.

There is one difference between the MHRA and ADA definition of disability. "The MHRA 'materially limits' standard is less stringent than the [ADA] 'substantially limits' standard." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Despite this difference, courts "analyze cases under the ADA and MHRA with the same standard." *Id. See also Kirkeberg v. Canadian Pac. Ry.*, 619 F.3d 898, 907 (8th Cir. 2010) (recognizing difference between "materially limits" standard and "substantially limits" standard but explaining that Minnesota courts "offer little elaboration on the difference"). In short, "[a]nalysis of a ADA claim applies equally to a MHRA claim." *St. Martin v. City of St. Paul*, 680 F.3d 1027, 1034 (8th Cir. 2012).

As explained above, the Second Amended Complaint contains insufficient facts to show that BNSF regarded Wells as disabled under the ADA. And because analysis of the ADA claim applies equally to the MHRA claim, the Court likewise finds that the Second Amended Complaint contains insufficient facts to show that BNSF regarded Wells as

9

disabled under Minn. Stat. § 363A.03, subd. 12.  By extension, Wells has failed to state a claim to relief and the Court grants the motion to dismiss this claim.

## IV.     Request for Leave to Amend the Second Amended Complaint

Wells argues that, "to the extent the Court finds [his Second] Amended Complaint is deficient, the Court should allow [him] leave to amend his Complaint further."  Wells Br. 13.  He provides no information concerning the amendments he intends to make.

Rule 15(a)(2) states that the "court should freely give leave [to amend] when justice so requires."  But "[a] district court may appropriately deny leave to amend where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment."  *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1015 (8th Cir. 2015) (citation omitted).

The Court denies leave to amend.  Both before filing his First Amended Complaint and before filing his Second Amended Complaint, Wells received notice through BNSF's prior motions to dismiss that his complaints contained insufficient facts to show that he qualifies as "disabled" under either the ADA or MHRA.  Still, Wells "repeated[ly] fail[ed] to cure deficiencies by amendments previously allowed."  *Streambend Props. II*, 781 F.3d at 1015.  On the basis of these repeated failures, the Court denies leave to amend.

In the alternative, the Court also denies leave to amend based on Wells' noncompliance with Local Rule 15.1.  This rule requires a party seeking leave to amend to provide (1) a copy of the proposed amended pleading and (2) a red-lined version of the

proposed amended pleading. D. Minn. LR 15.1. Wells provides neither. A district court may deny leave to amend when, as here, a party fails to follow Local Rule 15.1. *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 505 (8th Cir. 2009).

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant BNSF's second motion to dismiss [ECF No. 25] is DENIED as moot.

2. Defendant BNSF's third motion to dismiss [ECF No. 53] is GRANTED.

3. Plaintiff Wells' request for leave to amend his Second Amended Complaint is DENIED.

4. Plaintiff Wells' Second Amended Complaint [ECF No. 52] is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: November 16, 2017

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge